J. MODESTO BIRD and ANA M. BIRD, Plaintiffs and Appellees, *v.* EASTERN AIRLINES, INC., Defendant and Appellant.

No. R-70-81.      Decided May 11, 1971.

928

*Francisco Ponsa Feliú, Wilson F. Colberg,* and *Miguel A. Vallde-juli* for appellant. *Reichard & Colberg* for appellees.

Mr. Justice Martínez Muñoz delivered the opinion of the Court.

On November 10, 1966, J. Modesto Bird and his wife Ana M. Bird boarded an Eastern Airlines airplane in San Juan bound for Miami. The luggage which they delivered to the carrier consisted of two suitcases which contained personal effects. Upon arrival at Miami only one of their suitcases was delivered to them. The other suitcase was sent by mistake to Nashville, Tennessee, despite the fact that they were duly identified by their respective tags. At the Miami airport they lost some time trying to locate the suitcase. In Miami they spent $144.03 in personal effects, they were deprived of some amusements and had to make some telephone calls to Eastern asking whether they had located the suitcase.

The lost suitcase was delivered to them upon their return to San Juan on November 14, four days later, nothing being missing from its contents.

Two months later the Bird spouses sued Eastern for damages claiming the $144.03 which they spent in Miami buying personal effects and, also, the amount of $2,750 for damages consisting in the loss of time and inconveniences which they suffered in Miami on account of the suitcase lost.

Eastern alleged as defense that if it had any liability,

which it denied, the same was subject to the limitations established by the tariffs in effect approved by the Federal Civil Aeronautics Board.

The Superior Court granted the complaint, ordering Eastern to pay to Bird and his wife $144.03 for expenses, $500 for moral sufferings, plus $200 for attorney's fees.

The Superior Court held that the doctrine in the case of *Firpi* v. *Pan American World Airways, Inc.*, 89 P.R.R. 194 (1963), is not applicable to this case. It distinguished the case of Firpi on the ground that the suitcase therein was lost while in this one the suitcase was temporarily lost. The court held:

"Defendant alleges that the doctrine in the case of Firpi v. Pan American World Airways . . . is applicable to this case. However, the case of Firpi . . . is distinguishable from the case at bar since therein a suitcase which plaintiff had lost was involved, while in this case plaintiffs recovered the suitcase after a delay of several days, and requested compensation for pecuniary damages which they incurred when they were deprived of their belongings and for moral sufferings occasioned as a result of said temporary loss, as provided by § 1054 of our Civil Code, 31 L.P.R.A. 3018. Therefore, the fact that in the instant case defendant failed to perform the transportation contract by not delivering the suitcase on due time imposes the obligation of compensating the damages which the plaintiffs suffered, as provided by § 1060 of the aforementioned legal code, 31 L.P.R.A. 3024."

We agreed to review. In *Firpi* v. *Pan American World Airways, Inc.*, *supra*, we recognized as a general doctrine, uniformly upheld in American case law in the field of interstate air transportation, that the provisions or declarations contained in the tariffs which by Federal Law the airlines are required to file with the Civil Aeronautics Board, after being approved by the latter, constitute part of the transportation contract and they are valid and binding on the contracting parties irrespective of the actual knowledge thereof

that a passenger or shipper may have; that it is incumbent upon the Judicial Power to decide as to the scope of application of a tariff rule approved by the Board; and that the provisions limiting liability for lost luggage included in some tariffs approved by the Civil Aeronautics Board are valid.

The only difference in the facts between the *Firpi* case and the instant case is that in *Firpi* the suitcase containing jewelry valued at more than nine thousand dollars was lost forever, while in this case the suitcase was temporarily lost and was delivered to the passenger without anything missing from its contents. In *Firpi* we limited, on reconsideration, the liability of the carrier for loss of the suitcase and the valuable jewelry to the provisions of Rule 18-E (1) of the tariff of the carrier approved by the Civil Aeronautics Board. Said rule read as follows (*Firpi* v. *Pan American World Airways, Inc., supra* at p. 218):

"E—(1) Any liability of carrier is limited to $16.50 (250 french gold francs) or its equivalent per kilogram in the case of checked baggage or other property, unless a higher value is declared in advance and additional charges are paid pursuant to carrier's tariff. In that event the liability of carrier shall be limited to such higher declared value. In no case shall the carrier's liability exceed the actual loss suffered by the passenger. All claims are subject to proof of amount of loss."

Rule 16C(5)[1] of the tariff invoked by Eastern is practi-

---

[1] Rule 16C(5) reads as follows:

"Any liability of Carrier is limited to $16.50 U.S. Currency or $17.84 Canadian Currency (250 French gold francs) per kilogram in the case of checked baggage, and $330.00 U.S. Currency or $356.77 Canadian Currency (5000 French gold francs) per passenger in the case of unchecked baggage or other property, unless a higher value is declared in advance and additional charges are paid pursuant to Carrier's tariff.

"In that event the liability of Carrier shall be limited to such higher declared value. In no case shall Carrier's liability exceed the actual loss suffered by the passenger. All claims are subject to proof of amount of loss.

"Exception: For carriage wholly between San Juan, P.R. and a point

cally the same as the one in the *Firpi* case with the difference that in the one herein considered, in addition, limits in the case of unchecked baggage are established; the equivalent in Canadian currency is indicated, and the amount of $250 U.S. currency and its equivalent in Canadian currency is established as maximum limit of liability in flights between San Juan and a point in the Continental United States.

■   As we have seen, the trial court decided that the tariff rules of the carrier were not applicable to the case of suitcases lost and found after a delay and that the provisions of the Civil Code which impose liability for nonperformance of contract were applicable.

Rule 16C (5) of the tariff has a more ample scope than the one which the trial court attributed to it.[2] By its own text it extends to *"any liability"* of the carrier concerning checked or unchecked baggage. And in establishing the limit of liability it provides that in *no case shall* the carrier's liability *exceed the actual loss suffered* by the passenger. It also provides that, all claims are subject to *proof of amount of loss*. We decide that said Rule is applicable to the facts in the case which we are considering herein. It only remains to determine whether within the limitation of liability for the *actual loss suffered* which is established in the Rule, it is proper to grant *moral damages* for the sufferings and payment of the expenses for personal effects which they were

---

in the Continental U.S.A. the Carrier's liability under the conditions described above shall not exceed $250.00 U.S. Currency or $270.28 Canadian Currency."

[2] Only a part of the tariff rules of the carrier in effect were offered in evidence, for which reason we do not know whether a case like the instant one is contemplated in the text of any of the tariff rules not offered in evidence; we refer specifically to Rule 16C (11) which was not offered in evidence and which defendant cites in its brief.

"Rule 16(C) (11)—Carrier shall not be liable in any event for any consequential or special damage arising from carriage subject to this tariff, whether or not Carrier had knowledge that such damage might be incurred."

obliged to buy in Miami, as a result of the temporary loss of the suitcase.

■ The phrase *actual* loss suffered in its popular and common acception denotes the real, valid, tangible, material, palpable, substantial existence of the loss, the latter referring to things.[3] This is the interpretation which we give to such phrase and the one we should follow here.[4]

The statutory basis of the tariff system relies on the Federal Aviation Act of 1958.[5] One of the principal purposes of this legislation and of the Civil Aeronautics Act which preceded it was to establish a unified national system which would assure uniformity of treatment, in rates and services, to all persons using the facilities of air transportation, the intervention of the states in this area being substantially restricted. *Litchten* v. *Eastern Airlines, Inc.*, 189 F.2d 939 (2d Cir. 1951); 29 A.L.R.2d 1337; Pratt, *Tariff Limitations on Air Carriage Contracts*, 29 J. Air L. & Com. 14, 18–22 (1963); De Forest Billyou, Air Law 119–123 (Second Ed., 1964). See, *Liability of Air Carrier for Loss of or Damage to Passengers' Baggage or Contents Thereof*, 25 A.L.R.2d 1352 (1952); *Limitations of Liability: Passenger Injuries and Baggage Losses on Land, Sea and Air*, 34 Tul. L. Rev. 354 (1960).

■ ˙ Taking into consideration the purpose which inspires said system we cannot agree that the moral damage, consisting in the inconveniences suffered by the appellee-spouses in trying to locate the suitcase, constitutes an *actual loss*

---

[3] The tariff rule uses the phrase actual loss suffered. In relation to the meaning of *real* or actual, see *Diccionario General Ilustrado Vox* 1422 (2d ed.); J. I. Rodale, The Synonym Finder 15, 6th ed., Rodale Books, Inc.

[4] Section 15 of the Civil Code, 31 L.P.R.A. § 15:

"The words of a law shall generally be understood in their most usual signification, taking into consideration, not so much the exact grammatical rules governing the same, as their general and popular use."

[5] 72 Stat. 731, 49 U.S.C.A. § 1301 *et seq.*

recoverable under Rule 16C(5) of the transportation contract. The actual state of our case law does not recognize, either, the availability of a compensation for moral damages under the circumstances which the evidence in this case reveals: steps taken in trying to locate the suitcase; inconvenience; giving up some amusements; and making three or four telephone calls to the carrier. This is not the kind of emotional condition to warrant compensation. *Pereira* v. *I.B.E.C.*, 95 P.R.R. 28, 80–81 (1967).

■ It only remains to determine the availability of the claim for appellees' expenses in Miami in buying some personal effects as a result of the temporary loss of the suitcase.

The expenses amounted to $144.03. They recovered the suitcase four days later; nothing was missing. The granting of this item was clearly untenable. It constitutes, in effect, compliance for the second time with the obligation to deliver: one, the delivery of the suitcase with the personal effects; and the other, the payment of the equivalent in money for those same effects.[6]

The judgment appealed from will be set aside and another rendered dismissing the complaint.

Mr. Justice Hernández Matos did not participate herein.

---

[6] Although we have not formed opinion on it, it occurs to us that perhaps the compensation could be calculated on the basis of legal interest of the forced investment for four days.